RON QUIJADA (SBN 363726)
LAW OFFICES OF RON QUIJADA
750 E. GREEN STREET, SUITE 302
PASADENA, CA 91101
TELEPHONE: (626) 437-0724
FACSIMILE: (626) 604-8329
E-MAIL: RON@QUIJADALEGAL.COM

ATTORNEY FOR PETITIONER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ARMANDO PABLO CRISTOBAL**<br><br>Petitioner,<br><br>vs.<br><br>**FERETI SEMAIA, Warden, Adelanto ICE Processing Center; JAIME RIOS, Field Office Director, Los Angeles Field Office, ICE; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; and TODD BLANCHE, Acting Attorney General of the United States,**<br><br>Respondents | Case No.: 5:26-cv-5310<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**A# 245-161-482** |

## INTRODUCTION

1. Petitioner ARMANDO PABLO CRISTOBAL is a native and citizen of GUATEMALA who has been physically present in the United States since approximately 2023.

2. Petitioner is currently detained at the ADELANTO ICE PROCESSING CENTER in Adelanto, California by immigration authorities and is the subject of a pending removal proceedings.

3. Petitioner brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his unlawful arrest and detention by the United States Immigration and Customs Enforcement ("ICE").

4. On September 02, 2026, Petitioner was arrested by agents of U.S. Immigration and Customs Enforcement ("ICE"). Petitioner was arrested by immigration authorities in Moreno Valley, California. At the time of his arrest, Petitioner was traveling to work in his work truck. Petitioner was not committing a crime and there was no indication that he was about to commit a crime.

5. Petitioner was arrested without a pre-arrest warrant. He was given no notice of his impending arrest. According to Petitioner, the sole basis for his detention was racial profiling.

6. Before ICE arrested Petitioner, they had his information because he was in removal proceedings and has an asylum case pending before the Board of Immigration Appeals. The Government has therefore known Petitioner and his immigration history all these years.

7. Petitioner's detention is unlawful because it

(1) violates 8 U.S.C. §§ 1226(a) and 1357(a)(2);

(2) violates Petitioner's Fourth Amendment

(3) violates his right to procedural due process under the Fifth Amendment;

(4) violates his right to substantive due process under the Fifth Amendment.

8. Accordingly, Petitioner seeks a writ of habeas corpus ordering his immediate release from ICE custody because his continued detention.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction under 28 U.S.C. § 2241 (federal habeas statute); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2201-2 (declaratory judgment). This his action arises under the Fifth Amendment to the United States Constitution, the Immigration and Nationality Act (INA), United States Constitution Article I, Section 9 (Suspension Clause).

10. Venue is proper in the Central District of California under 28 U.S.C. § 2241 because Petitioner is currently detained within this District at the Adelanto ICE Processing Center. Venue properly lies within the Central District of California under 28 U.S.C.§ 1391, because this is a civil action in which Respondents are agencies of the United States, Petitioner is detained in this District, and a substantial part of the events or omissions giving rise to this action occurred in the district.

**PARTIES**

11. Petitioner ARMANDO PABLO CRISTOBAL is currently detained at the ADELANTO immigration detention center in Adelanto, California.

12. Respondent, FERETI SEMAIA, is the warden of Adelanto Detention Center, and is sued in his official capacity. The Adelanto Detention Center has immediate physical custody of Petitioner pursuant to the facility's contract with U.S. Immigration and Customs Enforcement to detain noncitizens and is a legal custodian of Petitioner.

13. Respondent, JAIME RIOS, is the ICE Field Office Director of the Los Angeles ICE Field Office and is sued in his official capacity. ICE Filed Office Director is responsible for the detention of Petitioner.

/ / /

/ / /

14. Respondent TODD LYONS is the Acting Director of U.S. Immigration and Customs Enforcement (ICE) and is sued in HIS official capacity. ICE is responsible for the detention of Petitioners.

15. Respondent MARKWAYNE MULLIN is the Secretary of the Department of Homeland Security (“DHS”), and is sued in his official capacity. The Secretary of Homeland Security is charged with the administration and enforcement of immigration laws. 8 U.S.C. § 1103(a).

16. Respondent TODD BLANCHE is the Attorney General of the United States and is sued in his official capacity as the head of the Department of Justice. The Attorney General is responsible for the fair administration of the laws of the United States.

**STATEMENT OF FACTS**

17. Petitioner is a native and citizen of Mexico currently detained by Immigration and Customs Enforcement (“ICE”) at the Adelanto ICE Processing Center. ***See*** **https://locator.ice.gov/odls/**

18. Prior to his detention, Petitioner continuously resided in Moreno Valley, California, at [ADDRESS], Moreno Valley, California 92553, where he had lived for approximately three years. Petitioner resided at that address with his daughter.

19. Prior to his detention, Petitioner was employed in the landscaping industry in Moreno Valley, California.

20. Petitioner entered the United States on or about 2023 with his daughter. Petitioner entered without inspection, was apprehended by immigration authorities, and was subsequently released into the United States with his daughter.

21. Since his release, Petitioner has continuously resided in the United States for approximately three years and had an asylum case pending.

/ / /

/ / /

**ICE DETENTION**

22. On or about September 2, 2026, Petitioner was arrested by immigration authorities in Moreno Valley, California.

23. At the time of his arrest, Petitioner was traveling to work in his work truck. Because Petitioner worked in landscaping, the truck contained machinery, tools, and other equipment used in the performance of landscaping work.

24. Petitioner was traveling with his employer, who was also detained during the encounter.

25. Approximately eight armed and masked individuals approached Petitioner and his employer, surrounded them, stopped them, and took them into custody. The individuals had visible firearms. **(See Exhibit 1 – Photographs of Arrest.)**

26. Before taking Petitioner into custody, the individuals did not ask Petitioner any meaningful questions regarding his identity, immigration history, residence, or circumstances.

27. Petitioner was taken into custody without being shown or served with a pre-arrest warrant and without prior notice that immigration authorities intended to arrest him.

28. At the time Petitioner was taken into custody, he was traveling to work, was not attempting to flee, was not committing a crime, and was not threatening or endangering anyone.

29. Only after Petitioner had been stopped and taken into custody did immigration authorities obtain or collect his personal identifying information.

30. Petitioner understood that he had not been targeted because of any criminal conduct or individualized conduct occurring at the scene. Petitioner is Hispanic and was traveling to perform manual landscaping work when he was approached and detained.

31. Petitioner contends that the circumstances surrounding his arrest indicate that he was targeted based on his perceived race, ethnicity, and appearance rather than any individualized determination that he had committed a crime or posed a risk of flight or danger.

**IMMIGRATION HISTORY**

32. After Petitioner entered the United States in approximately 2023, immigration authorities released him into the United States and placed him in removal proceedings.

33. Petitioner thereafter appeared in his immigration proceedings. His immigration matter has been on appeal since approximately December 2025. **(See Exhibit 2 – Appeal Receipt Notice.)**

34. At the time of his arrest on September 2, 2026, Petitioner's immigration proceedings remained pending on appeal.

**CRIMINAL HISTORY**

35. Petitioner has no known criminal history or criminal record in the United States.

36. At the time of his arrest, Petitioner was not being arrested pursuant to any criminal charge, criminal warrant, or allegation that he had committed a criminal offense.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## LEGAL BACKGROUND

37. The following legal principles govern Petitioner's claims for habeas corpus relief. Although Congress has authorized the Executive Branch to arrest and detain certain noncitizens under the Immigration and Nationality Act ("INA"), that authority remains subject to the Constitution, federal statutes, and longstanding principles governing executive detention. As discussed below, the Great Writ of habeas corpus provides the traditional means by which federal courts review the legality of immigration detention and remedy constitutional violations.

**A. Detention of Non-Citizens Under the INA**

38. The Immigration and Nationality Act (INA) prescribes distinct forms of detention for noncitizens in removal proceedings, distinguished primarily by the status of the noncitizen at the time of apprehension.

39. First, 8 U.S.C. § 1226 authorizes detention of noncitizens in standard removal proceedings before an immigration judge. Individuals detained under § 1226(a) are entitled to a bond hearing to determine eligibility for release. 8 C.F.R. §§ 1003.19(a), 1236.1(d). Noncitizens who have been admitted, or who are physically present in the interior of the United States, are subject to detention under § 1226(a).

40. Second, noncitizens arrested, charged with, or convicted of specified criminal offenses are subject to mandatory detention under 8 U.S.C. § 1226(c).

41. Third, the INA mandates detention for noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1), and for other recent arrivals seeking admission under § 1225(b)(2). These provisions are designed for the border context and for individuals seeking admission.

42. Finally, the Act provides for detention of noncitizens previously ordered removed, including those in withholding-only proceedings. 8 U.S.C. § 1231(a)–(b).

**B. Habeas Corpus is the Traditional Means of Challenging Unlawful Executive Detention**

43. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see *Rasul v. Bush*, 542 U.S. 466, 473 (2004).

44. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to a petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see *Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).

45. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A noncitizen in immigration custody may bring a § 2241 petition on the ground that his detention violates the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

46. The petitioner bears the burden of proving that he is being held contrary to law by a preponderance of the evidence. *Walker v. Johnston,* 312 U.S. 275, 286 (1941) ("On a hearing, [the § 2241 petitioner has] the burden of sustaining his allegations by a preponderance of evidence."); *Parke v. Raley,* 506 U.S. 20, 31 (1992); *Sumner v. Mata,* 449 U.S. 539, 551 (1981).

**C. Civil Immigration Detention is Subject to Constitutional Limitations**

47. Congress has authorized immigration detention under several provisions, including 8 U.S.C. §§ 1226 and 1231. That authority is not unlimited. Immigration detention is civil, not criminal, and remains subject to the Constitution's constraints.

48. The Supreme Court has repeatedly recognized that civil immigration detention serves limited regulatory purposes, principally ensuring a noncitizen's appearance at removal proceedings and protecting the community from danger. Because immigration detention is regulatory rather than punitive, continued detention must bear a reasonable relationship to those legitimate governmental interests. *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 527-28 (2003); *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

**D. The Fifth Amendment Requires Constitutionally Adequate Procedures before the Government May Deprive an individual of Physical Liberty**

49. The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," are entitled to protection under this provision of the Constitution. *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id*. at 690; see also *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

50. A procedural due process claim involves two inquiries: first, whether the challenged government action implicates a protected liberty interest; second, if so, what process is constitutionally due before that interest may be taken. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); accord *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property" (emphasis in original)).

51. Where a protected liberty interest is at stake, courts apply the three-factor test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

52. In *Mathews*, the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty interest: The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335; see *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context");

53. Because the government's discretion to detain individuals under 8 U.S.C. § 1226(a), and to revoke custody decisions under § 1226(b), is not "unlimited," that discretion must comport with the Mathews framework and constitutional due process more broadly. *Zadvydas*, 533 U.S. at 698.

**E. An Arrest Warrant is Required**

54. Section 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings.

55. The Statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

56. Under 8 C.F.R. §236.1(b)(1), a noncitizen may only be arrested and detained pursuant to the Form I-200 Administrative Warrant if it is issued by an authorized official: At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest.

57. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter. 8 C.F.R. § 236.1(b)(1).

**F. A warrantless arrest is valid if the government satisfies the limited exceptions under 8 U.S.C. § 1357(a)(2)**

58. Immigration officers are authorized to make warrantless arrests in limited circumstances. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation ... regulating the admission, exclusion, expulsion, or removal of aliens," or when an officer has reason to believe (i) the noncitizen is in the United States in violation of such laws or regulations and (ii) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. §§ 1357(a)(4) – (5) (providing other circumstances that justify warrantless arrest).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**COUNT ONE**

***Arrest and Detention in Excess of Statutory Authority***

***(Violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2))***

59. Petitioners repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

60. Section 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). When immigration officers proceed without a warrant, their authority is substantially narrower. *Arizona v. United States*, 567 U.S. 387, 407 (2012).

61. Under 8 U.S.C. § 1357(a)(2), immigration officers may conduct a warrantless arrest only where they have reason to believe both that the noncitizen is present in violation of the immigration laws and that the noncitizen "is likely to escape before a warrant can be obtained for his arrest." See also 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

62. Respondents failed to satisfy those statutory prerequisites.

63. At the time of his arrest, Petitioner had resided continuously in Moreno Valley for approximately three years, lived with his daughter, maintained regular employment in landscaping, and had an identifiable residence and place of employment.

64. Petitioner was also already known to the immigration authorities. He had previously been apprehended and processed upon entering the United States in approximately 2023, was released into the United States, was placed in removal proceedings, and had an immigration matter pending on appeal since approximately December 2025.

/ / /

65. These circumstances substantially undermine any contention that Petitioner was likely to disappear before immigration authorities could obtain an administrative warrant. Petitioner was not living clandestinely, had an established residence, maintained regular employment, and had an ongoing immigration proceeding through which the Government could identify and locate him.

66. Moreover, the circumstances of the arrest demonstrate no exigency. On September 2, 2026, Petitioner was traveling to work in his landscaping truck with his employer when approximately eight armed and masked individuals approached and detained them.

67. Petitioner was not fleeing from immigration officers, attempting to conceal his identity, committing a crime, or engaging in conduct suggesting that he intended to evade immigration authorities. In fact, he showed to all of his immigration proceedings and has a case pending on appeal.

68. Nor did the arresting officers conduct any meaningful pre-arrest inquiry concerning Petitioner's identity, residence, family ties, employment, immigration history, or likelihood of flight. Instead, Petitioner alleges that his personal identifying information was obtained only after he had already been stopped and taken into custody.

69. The absence of any such inquiry is particularly significant because § 1357(a)(2) does not authorize warrantless arrests merely because an officer believes an individual may be removable. The statute separately requires a reasonable, individualized basis to believe that the individual is likely to escape before a warrant can be obtained.

70. Respondents therefore lacked statutory authority under § 1357(a)(2) to arrest Petitioner without first obtaining an administrative warrant.

71. Respondents likewise did not execute a warrant issued pursuant to § 1226(a) before taking Petitioner into custody.

/ / /

72. Accordingly, Petitioner's warrantless arrest exceeded the authority Congress conferred upon immigration officers under 8 U.S.C. §§ 1226(a) and 1357(a)(2), and his resulting detention is unlawful.

**COUNT TWO**

***Violation of the Fourth Amendment***

***Unreasonable Seizure***

73. Petitioners repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

74. The Fourth Amendment prohibits unreasonable seizures, including arrests unsupported by probable cause or reasonable, individualized suspicion. Respondents seized Petitioner without a warrant and without probable cause or particularized suspicion that he had committed any offense or was subject to arrest

75. Here, Respondents seized Petitioner while he was traveling to work in Moreno Valley on September 2, 2026. Approximately eight armed and masked individuals approached Petitioner and his employer, surrounded them, stopped them, and took them into custody.

76. At the time the seizure began, Petitioner was merely traveling to his landscaping job in a work truck containing landscaping tools, machinery, and equipment. Petitioner was not committing any crime, attempting to flee, acting evasively, or engaging in conduct indicating that he posed a danger.

77. Critically, the arresting officers had not even asked Petitioner his identity before restraining his liberty. According to Petitioner, officers obtained his personal identifying information only after he had already been stopped and seized.

78. The facts therefore do not establish that the officers possessed, before the seizure, specific and articulable facts particularized to Petitioner demonstrating that he was unlawfully present or otherwise subject to immediate seizure.

79. To the extent Respondents relied upon Petitioner's Hispanic appearance, his apparent ethnicity, his occupation, his presence in a landscaping

work truck, or his appearance as a member of a work crew, those characteristics do not independently establish reasonable suspicion.

80. In *United States v. Manzo-Jurado*, the Ninth Circuit held that officers lacked reasonable suspicion to detain individuals based upon circumstances including their Hispanic appearance and appearance as members of a work crew where the officers lacked additional particularized information distinguishing them from lawful immigrants. 452 F.3d 1028, 1035–38 (9th Cir. 2006).

81. Petitioner's warrantless arrest, unsupported by probable cause, therefore violated the Fourth Amendment to the United States Constitution

## COUNT THREE

### *Violation of the Fifth Amendment*

### *Procedural Due Process*

82. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

83. Petitioners repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

84. The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas,* 533 U.S. at 693.

85. The Due Process Clause mandates constitutionally adequate procedures before the government may deprive an individual of liberty through civil detention. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine whether the procedures afforded were constitutionally sufficient, courts balance three factors: (1) the private liberty interest at stake; (2) the risk of erroneous

deprivation through the procedures used and the probable value of additional safeguards; and (3) the government's interest. *Id.*

86. While the government has discretion to detain individuals under 8 U.S.C. § 1226(a) and to revoke custody decisions under 8 U.S.C. § 1226(b), this discretion is not "unlimited" and must comport with constitutional due process. See *Zadvydas*, 533 U.S. at 698.

87. Applied here, all three Mathews factors weigh decisively in Petitioner's favor.

**Private Liberty Interest**

88. Petitioner's interest in physical liberty is fundamental and compelling. Here, Petitioner does not have a removal order. Petitioner possesses a substantial liberty interest in freedom from physical confinement. Prior to September 2, 2026, Petitioner had lived openly in Moreno Valley for approximately three years, resided with his daughter, maintained regular employment in landscaping, and remained at liberty while pursuing his immigration proceedings.

89. Petitioner had no criminal history in the United States and was not arrested in connection with any criminal offense.

90. At the time Respondents seized him, Petitioner was simply traveling to work with his employer. He was not fleeing, attempting to conceal himself, threatening anyone, or engaging in criminal activity.

91. Petitioner's liberty interest is particularly substantial because his immigration case remained pending on appeal. His detention therefore deprived him of the liberty he had exercised while actively pursuing ongoing immigration proceedings.

**The Risk of Erroneous Deprivation**

92. The procedures employed in Petitioner's case created a substantial risk of erroneous deprivation.

/ / /

93. Approximately eight armed and masked officers surrounded and seized Petitioner before conducting any meaningful inquiry into his identity, residence, employment, immigration history, or personal circumstances.

94. According to Petitioner, Respondents obtained or confirmed his personal identifying information only after he had already been stopped and restrained.

95. Petitioner was not shown a pre-arrest administrative warrant authorizing his seizure.

96. Nor did Respondents provide Petitioner, before the seizure, any meaningful opportunity to contest whether the statutory prerequisites for a warrantless immigration arrest existed, including whether Respondents had any reasonable basis to believe that Petitioner was likely to escape before a warrant could be obtained.

97. Those omissions created a substantial risk that an individual could be deprived of physical liberty first and that the factual and legal basis for the detention would be investigated only afterward.

98. That risk was particularly significant here because readily ascertainable facts weighed against immediate custodial detention. Petitioner had a stable residence, lived with his daughter, maintained regular employment, had no criminal history, had previously been processed by immigration authorities, and had a pending immigration appeal.

99. Basic procedural safeguards including confirming Petitioner's identity and immigration record before effecting the seizure and determining whether the statutory prerequisites for a warrantless arrest were satisfied would have materially reduced the risk of erroneous deprivation.

**<u>The Government's Interest</u>**

100. The government's interest in detaining Petitioner is not merely weak. It is, on this record, nonexistent. The Government undoubtedly possesses a

legitimate interest in enforcing the immigration laws and ensuring that noncitizens appear for immigration proceedings. That interest, however, does not eliminate the constitutional requirement that detention be implemented through lawful and reliable procedures.

101. On the facts alleged here, requiring Respondents to verify Petitioner's identity, immigration status, and the legal basis for a warrantless arrest before depriving him of physical liberty would have imposed minimal administrative burden.

102. This is particularly true where immigration authorities already possessed records concerning Petitioner’s prior apprehension, release, removal proceedings, and pending immigration appeal.

103. The Government’s legitimate enforcement interests therefore did not justify immediately depriving Petitioner of liberty without first employing readily available procedures capable of determining whether his seizure and detention were authorized.

104. Balancing the factors identified in *Mathews*, the procedures employed in Petitioner's case were constitutionally inadequate. Petitioner's fundamental liberty interest was substantial; the risk of erroneous deprivation was significant because officers allegedly seized him before determining his identity and the legal basis for arrest; and readily available safeguards would have imposed minimal burden upon the Government.

105. Petitioner’s deprivation of liberty under these circumstances violated the Due Process Clause of the Fifth Amendment.

106. Accordingly, Petitioner’s continued detention violates the Fifth Amendment right to procedural due process.

107. This absence of process violated Petitioner’s right to procedural due process under the Fifth Amendment.

/ / /

**COUNT FOUR**

***Violation of Fifth Amendment Right to Due Process***

***Substantive Due Process***

***(Arbitrary and Retaliatory Detention)***

108. Petitioners repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

109. The substantive component of the Fifth Amendment's Due Process Clause protects against arbitrary governmental action that deprives a person of liberty. Executive action violates substantive due process when it is so arbitrary or egregious that it constitutes an abuse of governmental power in the constitutional sense. *County of Sacramento v. Lewis*, 523 U.S. 833, 845–47 (1998).

110. The Government has identified ensuring appearance at immigration proceedings and protecting the community as principal regulatory interests supporting civil immigration detention. *Zadvydas*, 533 U.S. at 690–91.

111. Here, Petitioner's circumstances provided no apparent basis to conclude that immediate physical detention was necessary to prevent flight or protect the community.

112. Before his detention, Petitioner had resided continuously in Moreno Valley for approximately three years, where he lived with his daughter.

113. Petitioner maintained regular employment in landscaping and was traveling to work when immigration authorities seized him.

114. Petitioner has no criminal history in the United States. At the time of his arrest, he was not committing a crime, threatening anyone, attempting to flee, or engaging in conduct indicating that he posed a danger to the community.

115. Petitioner was also not attempting to evade the immigration process. Immigration authorities had previously apprehended and processed him following his entry into the United States in approximately 2023, released him into the United States, and placed him in removal proceedings.

116. Petitioner's immigration matter remained pending on appeal at the time of his September 2, 2026 arrest.

117. Nevertheless, approximately eight armed and masked officers surrounded Petitioner and his employer while they were traveling to work and took Petitioner into custody.

118. According to Petitioner, Respondents had not conducted any meaningful inquiry concerning his identity, residence, employment, immigration history, family ties, or likelihood of flight before restraining his liberty.

119. Respondents allegedly obtained or confirmed Petitioner's personal identifying information only after he had already been stopped and seized.

120. Petitioner further alleges that Respondents did not execute a pre-arrest administrative warrant and lacked circumstances establishing that he was likely to escape before a warrant could be obtained.

121. Civil detention cannot constitutionally become punishment or an arbitrary exercise of executive power. *See Zadvydas*, 533 U.S. at 690; County of *Sacramento v. Lewis*, 523 U.S. at 845–47.

122. Where, as alleged here, the Government restrains an individual's physical liberty despite his known residence, lack of criminal history, participation in ongoing immigration proceedings, and absence of flight or dangerous conduct, while failing first to establish a lawful individualized basis for immediate detention, the resulting deprivation of liberty is arbitrary and constitutionally suspect.

123. Petitioner's allegations are particularly serious because Respondents did not merely impose reporting requirements or other noncustodial conditions. They subjected him to physical confinement the most significant form of liberty deprivation without facts demonstrating that such confinement was reasonably necessary to accomplish a legitimate regulatory objective.

124. Petitioner's detention, as alleged, therefore lacks a reasonable relationship to the legitimate purposes of civil immigration detention and constitutes arbitrary executive action in violation of the substantive component of the Fifth Amendment's Due Process Clause.

125. Petitioner accordingly seeks appropriate habeas relief from his unlawful deprivation of liberty.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this court:

a. Assume jurisdiction over this matter;
b. Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from Custody
c. Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and
d. Order further relief as this Court deems just and appropriate

Respectfully Submitted,

Dated: 09/13/2026

*/s/ Ron Quijada*

Ron Quijada (SBN: 363736)
LAW OFFICES OF RON QUIJADA
750 E. Green Street, Suite 302
Pasadena, California 91101
Telephone: (626) 437-0724
Facsimile: (626) 604-8329
E-mail: ron@quijadalegal.com

**VERIFICATION PURSUANT TO 28 U.S.C. 2242**

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Respectfully Submitted,

Dated: 09/13/2026

*/s/ Ron Quijada*

Ron Quijada (SBN: 363736)
LAW OFFICES OF RON QUIJADA
750 E. Green Street, Suite 302
Pasadena, California 91101
Telephone: (626) 437-0724
Facsimile: (626) 604-8329
E-mail: ron@quijadalegal.com

# LIST OF EXHIBITS

**Exhibit 1 – Photographs of the Arrest**

**Exhibit 2 – Appeal Receipt Notice**